IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CASE NO. 1:19-cv-06604

MARIA LOYNAZ DE VAZQUEZ,

    Plaintiff,

v.

NEW YORK PROTON REGIONAL CENTER, LLC, a New York limited liability company, THE PROTON INSTITUTE OF NEW YORK, LLC, a New York limited liability company, WORLDWIDE CAPITAL MANAGEMENT, LLC, a Delaware limited liability company, YITZCHOK LEFKOWITZ, an individual, YITZCHAK TESSLER, an individual, ADAM KRAMER, an individual, and WENDY A. BLACK, an individual,

    Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff, MARIA LOYNAZ DE VAZQUEZ (the "Investor"), hereby sues Defendants, NEW YORK PROTON REGIONAL CENTER, LLC (the "Regional Center"), THE PROTON INSTITUTE OF NEW YORK, LLC (the "Owner"), WORLDWIDE CAPITAL MANAGEMENT, LLC (the "Company"), YITZCHOK LEFKOWITZ ("Lefkowitz"), YITZCHAK TESSLER ("Tessler"), ADAM KRAMER ("Kramer"), and WENDY A. BLACK ("Black") (Lefkowitz, Tessler, Kramer and Black shall be referred to, collectively, as the "Individual Officers"), (collectively, "Defendants"), and allege:

## NATURE OF ACTION

1. This is an action stemming from the misappropriation of the Investor's $500,000 investment in the Company, which was made, along with an additional advance of $25,000 to cover the costs and expenses of the transaction,[1] for purposes of funding a portfolio loan to the Company, for the development and construction of a 370,000+/- square-foot proton center to be developed near SUNY Downtown Medical Center in the New York City, New York area (the "Project"). The Investor's investment was made pursuant to a license granted by the Regional Center, which is designated by the U.S. Citizenship and Immigration Services ("USCIS") as a Regional Center within the Immigrant Investor Pilot Program, and under the guise that the investment would qualify as the investment component required for an EB-5 Visa entitling the Investor to seek permanent United States residency and, ultimately, to apply for U.S. citizenship (the "EB-5 Program").

2. The scheme orchestrated by the Company, the Owner and the Regional Center, through their principals, officers and directors (*i.e.,* the Individual Officers), has ensured the loss of the Investor's investment and the failure to meet the investment component required to ensure the removal of conditions so that the Investor's Conditional Lawful Permanent Residence ("CLPR"), and/or that of the Investor's family members, may be removed and the Investor and the Investor's family may obtain permanent residency. Specifically, despite multiple requests, the Investor did not receive confirmation that 10 full-time, year-around jobs have been created on

---

[1] The Investor initially advanced $550,000 to the Company, but the Company waived $25,000 of the $50,000 administrative fee required in the investment documents because the Investor retained independent immigration counsel to process the necessary EB-5 Application and returned that portion of the Investment to the Investor's immigration counsel.

account of the investment, which the Investor was required to demonstrate in order to ensure the removal of conditions and reside in the United States permanently.

3. In light of the Company's failure to meet the primary objective of the Investor's participation and Investment in the Company (*i.e.,* to ensure the employment of 10 full-time employees necessary to comply with the investment component required for an EB-5 Visa), it is now evident that the Investor's investment was induced by fraudulent misrepresentations and/or under false pretenses and the invested funds have been misappropriated, embezzled and/or misused in a manner that was not authorized or was contrary to the relevant contractual, fiduciary and other obligations owed by Defendants. The scheme orchestrated to extract and misuse the Investor's funds was made possible by the false comfort provided by representations regarding the involvement of third party professionals and institutions, including Larry J. Behar, Esq. ("Behar"), Larry J. Behar, P.A. (the "Behar Firm") ("Behar and the Behar Firm shall be referred to, collectively, as the "Immigration Counsel"), Dr. Michael K. Evans ("Dr. Evans"), Evans Carroll & Associates (the "Evans Firm"), Marcum LLP f/k/a Marcum Rachlin Accountants – Advisors ("Marcum"), and RBC Bank (the "Escrow Agent"), whose involvement was a fiction[2] perpetuated by Defendants in their offering documents provided to the Investor prior to making the investment in order to carry out their scheme. The scheme appears to be a Ponzi scheme and/or a blatant scheme designed to misappropriate funds from investors for the personal benefit of those involved or unknown third parties. The Investor has made demands of each of the Defendants for a return of their invested funds, but such demands have been ignored.

---

[2] Plaintiff has been able to confirm, through sworn evidence, that neither the Immigration Counsel nor Marcum were actually formally retained by Defendants for the services identified in the offering documents. Upon information and belief, Dr. Evans and the Evans Firm were also not formally retained and/or their did not authorize the inclusion of their names and information in the offering documents.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff is an individual that resides in the State of Florida.

5. The Regional Center is a New York limited liability company with its principal place of business in New York and is, therefore, subject to this Court's personal jurisdiction.

6. The Owner is a New York limited liability company with its principal place of business in New York and is, therefore, subject to this Court's personal jurisdiction.

7. The Company is a Delaware limited liability company with its principal place of business in New York and is, therefore, subject to this Court's personal jurisdiction.

8. Lefkowitz is a resident of New York and/or resides out of state, but is nonetheless subject to this Court's personal jurisdiction by virtue of his transacting business within New York and/or committing tortious acts within New York.

9. Tessler is a resident of New York and/or resides out of state, but is nonetheless subject to this Court's personal jurisdiction by virtue of his transacting business within New York and/or committing tortious acts within New York.

10. Black is a resident of New York and/or resides out of state, but is nonetheless subject to this Court's personal jurisdiction by virtue of her transacting business within New York and/or committing tortious acts within New York.

11. This action seeks damages in excess of $75,000 and there is complete diversity of citizenship between Plaintiff, a Florida resident, and Defendants, which are residents and/or domiciled in jurisdictions other than Florida, and, therefore this action is subject to this Court's diversity jurisdiction.

12. Venue is proper in this jurisdiction, as the causes of action alleged below accrued within this jurisdiction.

## **GENERAL ALLEGATIONS**

### **The EB-5 Program**

13. The EB-5 Program was created by the Immigration Act of 1990 to stimulate the U.S. economy by giving immigrant investors the opportunity to permanently live and work in the United States after they have invested in a so-called "new commercial enterprise" (an "NCE").

14. Through the EB-5 Program, a person and their immediate family can obtain permanent residency in the United States by investing $500,000.00 into a USCIS-approved project located in a Targeted Employment Area which creates a minimum of 10 jobs for United States workers. The majority of foreign investors participate in the EB-5 program by investing in commercial enterprises managed by designated "regional centers." Regional centers are entities approved by USCIS to secure foreign investment under the program and to use such investment to promote job creation.

15. The EB-5 Program thus serves the dual interests of spurring job creation in the United States and simultaneously affording eligible immigrants the opportunity to work, go to school and become lawful permanent residents of the United States.

16. Under the EB-5 Program, the immigrant investor first applies for an immigrant visa by submitting a Form I-526, Immigrant Petition for Alien Entrepreneur. USCIS' approval of the Form I-526 is conditioned upon the immigrant's investment of the requisite amount of money in an NCE that satisfies the applicable legal requirements. Upon approval of the Form I-526 petition, the immigrant investor and derivative family members will be granted conditional permanent residence for a two-year period. To remove the conditional resident status, the immigrant investor must file a Form I-829, Petition by Entrepreneur to Remove Conditions, ninety days before the two-year anniversary of the granting of the EB-5 investor's conditional resident status. USCIS'

approval of the Form I-829 is conditioned upon proof that the immigrant investor's investment has created at least ten full-time jobs for U.S. workers.

### The Investor's Participation in the EB-5 Program

17. In early 2011, the Investor and his undersigned counsel met with Tessler regarding a potential investment in the Project and the Regional Center as part of the EB-5 Program. At that meeting, Tessler provided the Investor with the Confidential Private Placing Memorandum for the Company (the "Offering Memorandum"), a copy of which is attached hereto as Exhibit 1.

18. On or about July 26, 2011, the Investor caused $500,000 to be transferred to the account of the Owner in connection with the Investor's investment in the Project and the Regional Center.

19. The Investor also executed an Operating Agreement for the Company (the "Operating Agreement"), a copy of which is attached hereto as Exhibit 2.

### The Offering Memorandum Is Littered with False Promises and/or Fraudulent Misrepresentations

20. The Offering Memorandum is fraught with fraudulent misrepresentations and promises that have not been fulfilled and were never intended to be fulfilled.

21. For example, the Offering Memorandum provides:

> The Offering has been structured so that each Subscriber, by becoming a Member in the Company, will have made an investment that qualifies as the investment component required for an EB-5 Visa entitling the Subscriber, assuming the Subscriber otherwise satisfies the non-investment criteria for an EB-5 Visa, to seek permanent United States residency and, ultimately, to apply for U.S. citizenship. The Project is located in a Regional Center designated by [USCIS] as a qualifying investment for the EB-5 program. However, Subscribers must be aware that there are numerous other factors that will lead to the grant or denial of the EB-5 Visa based upon the personal facts and circumstances of each Subscriber.

Offering Memorandum, at p. 19.  This statement was intended to provide assurances that the Investor was investing in a structure that was, at a minimum, guaranteed to meet the investment component required for an EB-5 Visa.

22. The Offering Memorandum further provides that "[t]he Board will provide documentation, upon request by a Member, as reasonably necessary and available in support of such Member's application for removal of conditions." *Id*. at p. 35.

23. To further assuage the Investor that the so-called "Offering" complied with the requirements for an EB-5 Visa, the Offering Memorandum provides that the Immigration Counsel has been retained to represent the Investor in the processing and filing of an I-526 Immigration Petition by Alien Entrepreneur (the "**EB-5 Application**") on behalf of the Investor.  *Id*. at p. 20.

24. The Immigration Counsel is referenced in the Offering Memorandum to provide comfort to the Investor that the immigration component of the investment was in full compliance with the requirements necessary to ensure approval of the EB-5 Application and, eventually, the removal of conditions to the Investor's and the Investor's family's residency.  The Offering Memorandum also provides a biography of the Immigration Counsel and summary of his impressive qualifications designed to lull the Investor into believing that there were no risks, from an immigration perspective, associated to the investment.  The Immigration Counsel was never formally retained by Defendants and he did not otherwise authorize Defendants to represent that he would be retained to represent investors in the scheme.  Any such representations were demonstrably false.

25. Further, the Offering Memorandum requires that the investment be paid to RBC Bank, a national bank which could only release the funds upon the occurrence of certain conditions: (i) acceptance of the Investor's subscription by the Company, which is defined therein

as the "Initial Condition," and (ii) the receipt of EB-5 Conditional Approval by the Investor, which is defined therein as the "Minimum Condition." *Id*. at p. 21.

26.     The Offering Memorandum, and the relevant agreements ultimately signed by the Investor, required the payment of the Investor's funds to RBC Bank, thereby reassuring the Investor in the transaction through lending RBC Bank's credibility.

27.     Further, the Offering Memorandum provides as follows:

> The Company had an independent economist conduct an economic and statistical analysis to determine the number of jobs expected to be created as a result of foreign investors each contributing $500,000 (U.S. Dollars) (assuming $500,000 funding to the Company per Investor) to the Company to enable it to fund the development of the Center pursuant to the Portfolio Loan. This analysis was conducted using the Regional Dynamics Economic Analysis Model (IMPLAN). This analysis demonstrated that new jobs are anticipated from expenditure of the proceeds of this Offering in excess of the 2500 jobs required under EB-5 law and regulations if all Member Interests being marketed in this Offering are sold pursuant to the maximum offering of 500 Units.

Offering Memorandum, at p. 28. This purported economic and statistical analysis, which was purportedly conducted by Dr. Evans and the Evans Firm, is included in the Offering Memorandum and was presumably provided by the Center in its initial application to be designated a Regional Center by the USCIS, to provide further comfort to the Investor that the investment being made would generate the necessary number of jobs to ensure that the investment complied with the EB-5 requirements. Dr. Evans' analysis, and the inclusion of his biography and qualifications in the Offering Memorandum, are intended to mislead the Investor to believe that the investment being made would actually be used for its intended purpose. Upon information and belief, Dr. Evans and the Evans Firm were never retained by the Company and did not otherwise conduct the "economic and statistical analysis" referenced in the Offering Memorandum. Any representations to the contrary were demonstrably false.

28. The Offering Memorandum also includes an engagement letter from Marcum, an independent public accounting and advisory service firm, regarding the provision of tax compliance services and accounting services in connection with the EB-5 Private Placing Offering, and the provision of administrative services with respect to the Offering. However, the engagement letter that was attached to the Offering Memorandum was never executed and, therefore, Marcum was not the actual administrative agent and never provided the Defendants with the services put forth in the engagement letter. The inclusion of Marcum's proposed engagement letter in the Offering Memorandum was intended to induce the Investor by providing further assurances that the investment being made would serve a legitimate function which would be properly accounted for by a reputable accounting firm. Such representations were demonstrably false.

29. The Offering Memorandum identifies a series of "Immigration Risk Factors," none of which include a risk that the investment being made by the Investor would not generate the 10 jobs required for removal of conditions. To the contrary, the Offering Memorandum is designed and drafted to provide false assurances that such a requirement would be met without any risk.

### The Investor's Funds Have Been Misappropriated

30. The Investor complied with all of the obligations set forth in the relevant contractual documents, including the Subscription Agreement and the Operating Agreement. The Investor advanced $550,000 to the Company, through RBC Bank.

31. The Company accepted the Investor's subscription and the Investor was admitted as a member of the Company. An EB-5 Application was submitted on behalf of the Investor and the Investor and/or the Investor's family received a CLPR.

32. Thereafter, in anticipation of seeking removal of the conditions of the Investor's CLPR, the Investor's immigration counsel attempted to obtain the documentation necessary for the Investor to support the Investor's application for removal of conditions. At that point, the Company and the Individual Officers, as well as the Immigration Counsel, were non-responsive and of no help. It became clear that the investment component of the EB-5 Application had not been met and the Investor's investment had been squandered.

33. The driving purpose of the Investor's participation in the Offering was to ensure compliance with the investment component of the EB-5 Application. To that end, the Company was required to use the proceeds of the investment to make a portfolio loan to the Owner in order to develop the Project and, as a result, generate the 10 jobs necessary for the investment to qualify for an EB-5 Visa. The Company was required to provide documentation to support the removal of conditions attached to the Investor's and the Investor's family's CLPR.

34. Rather than honor their obligations, and provide the necessary documentation, the Company, the Owner and the Regional Center, as well as their Individual Officers, have refused to provide the documentation and have attempted to wipe their hands of their contractual, fiduciary and other obligations owed to the Investor.

35. It is clear that the Investor's funds were mishandled and/or misappropriated, notwithstanding the purported involvement of RBC Bank to perform escrow tasks and administrative functions in connection with the Investor's investment.

36. Each of the Defendants failed to ensure that the Investor's funds would be utilized in accordance with the Offering Memorandum, the Operating Agreement and applicable law, and have failed to meet the most essential and basic requirements of the investment. The Immigration Counsel, Dr. Evans and the Evans Firm were all instrumental in assisting the Company, the Owner

and/or the Center to orchestrate and execute a fraudulent scheme designed to swindle millions of dollars advanced by the Investor, and others similarly situated, under the guise of participation in a legitimate investment meeting the requirements of the EB-5 Application.

37. While the Investor is cognizant of the investment risks associated with making a speculative investment, such risks (as outlined in the Offering Memorandum and the relevant contractual documents) do not include the risk that the Investor's funds would simply be misappropriated and/or misapplied.

38. The Offering Memorandum does not, and neither do the contractual documents executed by the parties, disclaim the risk that the Investor's investment would not generate sufficient jobs to comply with the EB-5 requirements for removal of conditions to the CLPR.

39. As a result of the fraudulent scheme orchestrated or enabled by Defendants, the Investor has lost the investment made in the Company and has been forced to participate in a separate, but legitimate, EB-5 investment offering, or to apply for a different type of Visa, to ensure the Investor's continued legal residence in the United States.

40. On March 18, 2018, the Investor caused the demand correspondence attached hereto as Exhibit 3 to Defendants and the Immigration Counsel, Dr. Evans and the Evans Firm, thereby demanding a return of the Investment within ten (10) days.

41. Despite the Investor's demand, Defendants failed to return the Investor's investment within the time period set forth in the demand letter, or since that time.

42. All conditions precedent to the filing of this action have occurred, been performed or have been waived.

## CAUSES OF ACTION

## COUNT I – FRAUD

43. The Investor hereby incorporates each of the allegations of Paragraphs 1 through 43 above as if set forth fully herein.

44. This is an action for fraud against Defendants.

45. As set forth in detail above, Defendants misrepresented material facts, omitted material facts and/or made false promises without the intent or ability to perform such promises in the Offering Memorandum.

46. The misrepresentations, omissions and false promises were false and misleading at the time they were made in order to defraud the Investor.

47. Defendants knew or consciously disregarded that the representations were false when made and/or they made the representations and omissions with reckless disregard as to their truth or falsity.

48. Defendants had a duty to disclose the material information they concealed from the Investor.

49. The Investor reasonably relied upon the foregoing representations and omissions to their detriment, including by investing in the Project.

50. As a direct and proximate cause of Defendants' fraudulent conduct, the Investor has sustained damages, in an amount to be determined at trial, including the loss of the investment.

51. Defendants' actions were wanton, willful, malicious, morally culpable and were taken in bad faith.  Defendants' actions and willful misconduct demonstrate a criminal indifference to civil obligations and warrant the imposition of punitive damages.

WHEREFORE, the Investor hereby demands the entry of a judgment in his favor, awarding the Investor money damages, punitive damages, and such further relief as the Court deems just and proper under the circumstances.

## COUNT II – CIVIL CONSPIRACY

52. The Investor hereby incorporates each of the allegations of Paragraphs 1 through 43 above as if set forth fully herein.

53. This is an action for civil conspiracy against Defendants.

54. Defendants conspired to do an unlawful act or a lawful act by unlawful means. Specifically, Defendants conspired to defraud the Investor to make the investment in the Project based upon false representations or false promises made without the intent or ability to perform such promises.

55. As set forth above, each of the Defendants did an overt act in furtherance of their conspiracy.

56. As a direct and proximate cause of Defendants' acts done in furtherance of the conspiracy, the Investor has sustained damages.

WHEREFORE, the Investor hereby demands the entry of a judgment in his favor, awarding the Investor money damages, punitive damages, and such further relief as the Court deems just and proper under the circumstances.

## COUNT III – UNJUST ENRICHMENT

57. The Investor hereby incorporates each of the allegations of Paragraphs 1 through 43 above as if set forth fully herein.

58. This is an action for unjust enrichment against the Owner.

59. The Investor conferred a benefit upon the Owner by depositing $500,000 in the account of the Owner.

60. The Owner accepted this benefit without providing adequate value in exchange.

61. Under the circumstances, it would be inequitable for the Owner to retain the $500,000 benefit provided by the Investor.

WHEREFORE, the Investor hereby demands the entry of a judgment in his favor and against the Owner, awarding the Investor money damages, and such further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

By:    s/ Luis A. Cordero
Luis A. Cordero
Florida Bar No.: 856400
lcordero@corderoassociates.com
Cordero & Associates, P.A.
*Counsel for Plaintiff*
200 S. Biscayne Blvd., Ste. 4650
Miami, FL 33131
T: (305) 777-2677
F: (305) 777-2670

By:    s/ Eduardo F. Rodriguez
Eduardo F. Rodriguez
Florida Bar No. 036423
EFR LAW FIRM
*Counsel for Plaintiff*
1 Alhambra Plaza, Ste. 1225
Coral Gables, Florida 33134
Office: (305) 340-0034
Mobile: (305) 978-9340
eddie@efrlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) generated by the CM/ECF system and paper copies will be sent to those indicated as non-registered participants, on this 3rd day of October 2019.

By: /s/ Eduardo F. Rodriguez
Eduardo F. Rodriguez